Case No. 23-6019

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ARIEL SCHLOSSER
*Plaintiff/Appellee*
**v.**

VRHABILIS, LLC
*Defendant/Appellant*

---

On appeal from the United States District Court
For the Eastern District of Tennessee, at Chattanooga
Case No. 3:20-cv-00190- TRM-JEM

---

BRIEF OF PLAINTIFF/APPELLEE ARIEL SCHLOSSER

---

G. Brandon Hall
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group, LLC
1720 West End Ave., Suite 402
Nashville, TN 37203
bhall@eclaw.com
lauren@eclaw.com
emily@eclaw.com

Attorneys for Plaintiff/Appellee Ariel Schlosser

## CORPORATE DISCLOSURE STATEMENT

Appellee, Ariel Schlosser, makes the following disclosures as required by

Sixth Circuit Rule 26.1:

1. Are said parties a subsidiary or affiliate of a public corporation? If yes, list

the identity of the parent corporation or affiliate and the relationship between it and

the named party.

No.

2. Is there a publicly owned corporation, not a party to the appeal that has a

financial interest in the outcome?

No.


/s/ *G. Brandon Hall*_____
G. Brandon Hall
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group
1720 West End Ave., Suite 402
Nashville, TN 37203
(615) 850-0632
bhall@eclaw.com
lauren@eclaw.com
emily@eclaw.com

## Table of Contents

Corporate Disclosure Statement……………………………………………… .ii

Table of Authorities…………………………………………………………v-vi

Statement Regarding Oral Argument……………………………………………..1

Statement of the Case………………………………………………………….2-18

    A. Factual Background…………………………………………..… 2-18

    1. Ms. Schlosser's Initial Employment………………………………….2-3

    2. Ms. Schlosser's Counseling…………………………..…………… . 3-4

    3. Harassment by Tyler Sanders ……………………………… . . .4-5

    4. VRH's Investigation …………………………………..………… . .5-10

    5. Ms. Schlosser loses her driving privileges …………………………… .10-12

    6. Ms. Schlosser resumes diving …………………………………………12-13

    7. Ms. Schlosser is again prohibited from diving …………………….....13-14

    8. Harassment by Aaron Brouse …………………………………… 14-16

    9. Ms. Schlosser's Resignation …………………………………….. 16-17

    10. Defendant still did not investigate Ms. Schlosser's allegations ……… 17-18

Summary of the Argument…………………………………………… 18-19

Standard of Review…………………………………………………… 20

Argument…………………………………………………………….20-42

    A. The District Court correctly found Ms. Schlosser proffered sufficient evidence she was subjected to a hostile work environment based on her gender..20-21

1.  The District Court correctly found Ms. Schlosser proffered sufficient evidence for which the jury reasonably concluded she was subjected to severe and pervasive harassment……………………………………21-24

2.  The District Court correctly found Ms. Schlosser proffered sufficient evidence for which the jury reasonably found the harassment was based on her gender…………………………………………………………24-26
    i.   The knot test was based on Ms. Schlosser's gender……………..26
    ii.  Mr. Sanders' harassment was based on Ms. Schlosser's gender….26-27
    iii. Ms. Schlosser had her driving privileges revoked because of her gender…………………………………………………………27
    iv.  Ms. Schlosser was removed from the dive rotation because of her gender ………………………………………………...28-30
    v.   Aaron Brouse's harassment was based on Ms. Schlosser's gender …………………………………………………………..30-31

B.  The District Court correctly found Ms. Schlosser proffered sufficient evidence to impose employer liability ……………………………………….. .31-42

1.  The District Court correctly found Ms. Schlosser proffered sufficient proof which the jury could reasonably conclude her dive supervisor, Tyler Sanders, in coordination with other VRH supervisors, took tangible employment actions against her …………………………………………………...33-34

2.  The District Court correctly found Ms. Schlosser proffered sufficient evidence which a reasonable jury could conclude VRH was liable for co-worker harassment …………………………………………………..35-37

3.  VRH's investigation exhibits indifference to harassment …………..37-42
    i.   The June 20, 2016 investigation was a sham investigation …………………………………………………………37-40
    ii.  VRH failed to investigate Ms. Schlosser's allegations in her resignation letter ………………………………………...40-42

Conclusion ……………………………………………………………..43

Certificate of Compliance………………………………………………………44

Certificate of Service………………………………………………………...45

Designation of Relevant District Court Documents………………………………46

# TABLE OF AUTHORITIES

## CASES

*Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir. 2002)........................................ 29, 34

*Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000) ............................29

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)............................ 36, 37

*Doe v. City of Detroit, Mich.*, 3 F.4th 294, 301 (6th Cir. 2021) ........................ 35, 38

*Equal Emp't Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir.

  1997) ................................................................................................................25

*Equal Emp't Opportunity Comm'n v. New Breed Logistics*, 783 F.3d 1057 (6th Cir.

  2015) ................................................................................................................23

*Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) ....................................35

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ............................................... 25, 26

*Lemanna v. Dayton Police Dept.*, 788 F. App'x (6th Cir. 2019)..............................24

*Newton v. Ohio Dep't of Rehab. & Correction-Toledo Corr. Inst.*, 496 F. App'x 558

  (6th Cir. 2012)..................................................................................................24

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)...................... 28, 29

*Radvansky v. City of Olmsted*, 496 F.3d (6th Cir. 2007)........................................24

*Smith v. Rock-Tenn Servs., Inc.*, No. 3:12-CV-00616, 2015 WL 13187074, at *5

  (M.D. Tenn. Apr. 16, 2015)..............................................................................44

*Spengler v. Worthington Cylinders*, 615 F.3d 481 (6th Cir. 2010) ........................23

*Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) ...............................................35

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013)............. 29, 34

*West v. Tyson Foods, Inc*., 374 F. App'x 624, 633 (6th Cir. 2010) ................... 43, 44

*Williams v. General Motors Corp.,* 187 F.3d 553 (6th Cir. 1999) ......... 26, 28, 29, 44

*Wyatt v. Nissan N. Am.*, 900 F.3d 400, 412 (6th Cir. 2021) ....................................35

## RULES

6 Cir. R. 26.1 ...............................................................................................2

Fed. R. Civ. P. 50(b) .................................................................................23

## I.      STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellee, Arielle Schlosser ("Ms. Schlosser") respectfully submits that oral argument is necessary. The issues raised on appeal are complicated and nuanced and oral argument will provide substantial assistance to the panel assigned to the appeal.

## II.      STATEMENT OF THE CASE

### A. Factual Background

### 1.  Ms. Schlosser's Initial Employment

Ariel Schlosser ("Schlosser") is a certified commercial diver and unexploded ordinance ("UXO") technician. She holds certifications from the Academy of Commercial Diving Educators, Diver Certification Board of Canada, Non-Destructive Testing from the American Society for Nondestructive Testing, Hazardous Waste Operations and Emergency Response from OSHA, and Unexploded Ordinance certification from Peak Technical Institute. (Trial Transcript ("Tr.") 2/21/23, R. 89, Page ID # 3123-3124, Pl. Appx., Pl. Trial Ex. 1, Appx_0001). Both the commercial diving and UXO industries are male dominated fields. (Tr. 2/21/23, R. 89, Page ID # 3136).

Ms. Schlosser began working for VRHabilis, LLC ("VRH") on May 23, 2016 as part of the Cape Pogue Project. (Tr. 2/21/23, R. 89, Page ID # 3135). She was hired as a diver, standby diver, tender, and UXO Tech I. (*Id*. at 3134; Pl. Appx., Pl.

Trial Ex. 5, Appx_0002-4). Pay rates varied depending on whether a person was performing duties as a diver, standby diver, or tender. (*Id*. at 3141-3142, Pl. Appx., Pl. Trial Ex. 5, Appx_0002-4). For example, UXO Tech I divers were paid $73.09 per hour while diving, $69.25 per hour while standby diver, and $61.53 per hour while tending. (*Id*.). VRH did not provide any training on company policies or site specific training. (Tr. 2/21/23, R. 89, Page ID # 3143, 3224).

On Ms. Schlosser's first day, Diving Program Manager Scott Alogna asked Ms. Schlosser to perform a knot test. (Tr. 2/21/23, R. 89, Page ID # 3144-3145, 3148, 3227). Mr. Alogna acknowledged he did not ask any males to perform a knot test. (Tr. 2/22/23, R. 90, Page ID # 3470-3471). Mr. Alogna then instructed Ms. Schlosser to go practice tying knots while her teammates were performing other duties. Mr. Alogna failed to tell anyone else of his instruction to Ms. Schlosser. (Transcript 2/22/23, R. 90, Page ID # 3470-3471). Ms. Schlosser testified this made her feel singled out and made her look like she wasn't being a team player. (Transcript 2/21/23, R. 89, Page ID # 3145).

On May 26, 2016, Ms. Schlosser performed her first dive, which she admits did not go as well as she had hoped. (*Id*. at 3145). Shortly after entering the water, Ms. Schlosser had to exit the water to add more weight to her weight belt. (*Id*. at 3145-3146). Travis Watts, a far more experienced diver, also had to exit the water to add more weight to his weight belt that morning. (*Id*. at 3146-3147). Ron Madden,

the Project Manager, cited Ms. Schlosser having to add weight to her weight belt as a reason to remove her from the dive rotation moving forward. (Tr. 2/27/23, R. 92, Page ID # 3696-3698). Importantly, Mr. Madden had no dive experience, the Cape Pogue Project was his first project of dive operations, and he admitted he had no qualifications to evaluate diving performance. (*Id*. at 3695).

### 2. Ms. Schlosser's counseling

On June 1, 2016, Ms. Schlosser was counselled by VRH COO Elliot Adler. (Tr. 2/21/23, R. 89, Page ID # 3148; Pl. Appx., Pl. Trial Ex. 14, Appx_0005-6). Mr. Adler also cited Mr. Schlosser for tying knots while the rest of the team was working, as she had previously been instructed to do by Mr. Alogna. (*Id*. at 3148, 3150). While VRH produced a written counseling form citing four separate issues, Ms. Schlosser had never seen the counseling form prior to this litigation, several of the alleged issues never occurred and were never discussed with her, and it was not signed by either Ms. Schlosser or Mr. Adler. (*Id*. at 3149-3152; Pl. Appx., Pl. Trial Ex. 14, Appx_0005-6). In fact, it was never provided to VRH's human resources manager. (Tr. 2/22/23, R. 90, Page ID # 3366).

Mr. Adler then informed Ms. Schlosser she would not be diving anymore because she was not pulling her weight. (Tr. 2/21/23, R. 89, Page ID # 3148). Mr. Madden admitted that he, Mr. Alogna, and Mr. Adler instructed the dive supervisors to keep Ms. Schlosser out of the dive rotation. (Tr. 2/27/23, R. 92, Page ID # 3694-

3697). As a result of being removed from the diving rotation, Ms. Schlosser was the lowest paid member on her team. (*See* Transcript 2/21/23, R. 89, Page ID # 3141–3142, 3204-3206; Transcript 2/22/23, R. 90, Page ID # 3281–3283).

Ms. Schlosser also testified that after the counseling, Heath Nettleton, UXO Tech III, informed her VRH was trying to replace her. (Tr. 2/22/23, R. 90, Page ID # 3258-3259). In fact, the evidence at trial showed VRH was trying to replace Ms. Schlosser even before the counselling. (Pl. Appx., Pl. Trial Ex. 15, Appx_0010-14). On May 31, 2016, Mr. Madden asked VRH Human Resources, Diane Backes, to find a replacement UXO Tech I. (Tr. 2/22/23, R. 90, Page ID # 3368;  Tr. 2/27/23, R. 92, Page ID # 3735-3739;  Pl. Appx., Pl. Trial Ex. 15, Appx_0010-14). When Ms. Backes inquired as to who was being replaced, Mr. Madden confirmed "Tech Schlosser." Ms. Backes' response was, "Oh…the female." (Pl. Appx., Pl. Trial Ex. 15, Appx_0010-14; Tr. 2/22/23, R. 90, Page ID # 3368).

### 3. Harassment by Tyler Sanders

After her counselling, Ms. Schlosser attempted to have a discussion with her teammates which resulted in Tyler Sanders, her dive supervisor, becoming confrontational and yelling, "you're not a real diver," "you've never worked a real job," "your opinion doesn't matter," and, "shut the f*** up and let the real divers do their job." (Tr. 2/21/23, R. 89, Page ID # 3155). The harassment continued daily thereafter. As Ms. Schlosser testified,

> Tyler was still having issues with me, and he was just constantly, incessantly yelling at me at work, before work. We lived together. We drove to the job site together, we drove back, and we were at the house together. So it just was never-ending. And he would curse me out at work and was very hostile.

(*Id*. at 3158). This was not a situation where Ms. Schlosser could simply walk away or avoid her harasser, rather, she was at a remote job site away from home where she lived with her co-workers and harassers. (*Id*. at 3239). Additionally, the members of the team all work in close proximity with each other. (*Id*. at 3167). Ms. Schlosser also testified that Mr. Sanders threatened her job. (*Id*. at 3258). Ms. Schlosser never had any issues with Tyler Watts or Chester Prince, her teammates on Sanders' team. (*Id*. at 3166).

Ms. Schlosser reported Mr. Sanders' harassment to the site manager, Paul Baril. In response, Mr. Baril stated Mr. Sanders had demanded Ms. Schlosser be removed from his team. (Tr. 2/21/23, R. 89, Page ID # 3158, 3257). She further testified she endured weeks of abuse, everyone witnessed her constantly being berated, cursed out, and told she just needs to shut the hell up, and nothing was being done about it. (*Id*.) Mr. Adler testified Mr. Sanders did not treat any of the males the same way he treated Ms. Schlosser. (Tr. 2/23/23, R. 91, Page ID # 3591-3592).

### 4. VRH's Investigation

Diane Backes is VRH's subject matter expert for human resources, and she is the person trained in the position. (Tr. 2/22/23, R. 90, Page ID # 3435). Ms. Backes

does not have any certification in human resources; she took the Society of Human Resources Management course, which is based on overall knowledge of human resources, but she did not pass the course. (*Id*. at 3353). Her duties include recruiting, hiring, workplace policy and procedure, compliance, handling employee complaints, grievances, and disputes. (*Id*. at 3352). According to Ms. Backes, when she investigates a potential policy violation, she has a form, she talks to the employee to find out why they didn't follow the policy, and the consequences of not following the policy. (*Id*. at 3359). She also acknowledged Defendant has a policy against harassment and that verbal harassment by one's supervisor is a human resources issue. (*Id*. at 3361-3362, 3375; Pl. Appx., Pl. Trial Ex. 36, Appx_0015-38). She also agreed treating someone differently because of their gender is sexual harassment. (Tr. 2/22/23, R. 90, Page ID # 3382-3383).

On Friday, June 17, 2016, Ms. Schlosser reported Mr. Sanders' harassment to Defendant's human resources, Diane Backes. (Tr. 2/21/23, R. 89, Page ID # 3158; Tr. 2/22/23, R. 90, Page ID # 3371; Pl. Appx., Pl. Trial Ex. 26, Appx_0039-40). Ms. Backes initially responded to Ms. Schlosser stating, "Confirming I have received your email and your official report. I am currently on vacation and will be back in the office on Monday. I will look into this matter." (*Id*. at 3373; Pl. Ex. 26). Shortly after, Ms. Backes forwarded Ms. Schlosser's complaint to Mr. Adler, Mr. Madden, and Mr.

Alogna with the opening, "Please the email from Ariel below. *I know there has been talk about replacing her. . ."*(*Id.* at 3442-3444; Pl. Ex. 26) (emphasis added).

Ms. Backes testified she has previously gone to the job site when there is a complaint, but she did not go to the job site to address Ms. Schlosser's claims. (Tr. 2/22/23, R. 90, Page ID # 3446-3447). Mr. Adler and Ms. Backes claimed this is because Ms. Backes was out of the country. (*Id.* at 3435; Tr. 2/23/23, R. 91, Page ID # 3614). Mr. Adler and Mr. Madden testified that the investigation occurred on Monday, June 20, 2016. (Tr. 2/23/23, R. 91, Page ID # 3669; Tr. 2/27/23, R. 92, Page ID # 3746). By her own admission, and her initial email response to Ms. Schlosser, Ms. Backes returned to work Monday, June 20, 2016. (Tr. 2/22/23, R. 90, Page ID # 3373).

Despite her availability, Ms. Backes did not investigate any of Ms. Schlosser's claims. (Tr. 2/22/23, R. 90, Page ID # 3375, 3377-3380). Rather, Mr. Adler conducted the investigation into Ms. Schlosser's complaint. Ms. Backes did not do any independent investigation to determine whether Mr. Adler handled the investigation properly. (Tr. 2/22/23, R. 90, Page ID # 3436). At times, Ms. Backes claimed she didn't investigate the complaints because Mr. Adler investigated them. (*Id.* at 3374-3375; 3377-3378). At other times, Ms. Backes claimed she couldn't investigate because Ms. Schlosser did not respond to her email, which happened to

come on the same day Mr. Adler was allegedly investigating the complaint. (*Id.* at 3375-3376).

Mr. Adler acknowledged the investigation was related to sex/gender-based harassment. (Tr. 2/23/23, R. 91, Page ID # 3637-3638). During his alleged investigation, Mr. Adler interviewed all the males before he ever spoke to Ms. Schlosser. (Tr. 2/23/23, R. 91, Page ID # 3677-3678). Mr. Adler claimed he interviewed Ms. Schlosser last because he did not want it to appear that his investigation was biased or that he presumed her complaint was honest. (Tr. 2/23/23, R. 91, Page ID # 3677-3678). Yet, he did not believe interviewing the males first could suggest he favored their opinions over Ms. Schlosser's claims. (Tr. 2/23/23, R. 91, Page ID # 3677-3678). Ms. Schlosser testified when she finally spoke with Mr. Adler that she "was scared and kind of felt pressured to say that everything was okay." (Tr. 2/21/23, R. 89, Page ID # 3163).

At trial, Mr. Adler testified Ms. Schlosser's teammates supported her claim that Mr. Sander's singled her out and treated her differently. (Tr. 2/23/23, R. 91, Page ID # 3615-3617, 3619-3620). He even acknowledged Mr. Sanders' conduct was harassing and he found Ms. Schlosser's claims were valid. (Tr. 2/23/23, R. 91, Page ID # 3670, 3680). When asked if he believed the harassment was based on gender, Mr. Adler could not recall whether they even asked Mr. Sanders about that but acknowledged there were two genders at play. (Tr. 2/23/23, R. 91, Page ID # 3671).

He also testified Mr. Sanders did not treat any of the males this way. (Tr. 2/23/23, R. 91, Page ID # 3591-3592). Despite that, Mr. Sanders did not receive any formal discipline. (Tr. 2/23/23, R. 91, Page ID # 3581-3582, 3587, 3614, 3680-3681). In fact, Mr. Adler testified Mr. Sanders would have to harass Ms. Schlosser multiple times and be witnessed by him before Mr. Sanders received formal discipline. (Tr. 2/23/23, R. 91, Page ID # 3588, 3681). Instead, at Mr. Sanders' request, Ms. Schlosser was removed from his team and counselled. (Pl. Appx., Pl. Trial Ex. 29, Appx_0041; Transcript 2/21/23, R. 89, Page ID # 3159; Transcript 2/22/23, R. 90, Page ID # 3259, 3363, 3366-3367, 3381).

As a result of the complaint, Ms. Schlosser was moved from Mr. Sanders' team to John Bigos' team. (Tr. 2/21/23, R. 89, Page ID # 3159, 3259, 3261, 3164). Additionally, Mr. Sanders was moved to management housing. (*Id*. at 3163). Ms. Schlosser later learned these moves were to appease Mr. Sanders. (*Id*. at 3159, 3163; Pl. Appx., Pl. Trial Ex. 19, Appx_0042-43). Ms. Schlosser ultimately sent Ms. Backes an email stating the matter had been resolved. (Tr. 2/21/23, R. 89, Page ID # 3162). Ms. Schlosser testified she sent the email out of self-preservation and hoping to just move forward. (*Id*.). She further testified,

> Well, since I was already being harassed on the job and it – and no one actually got talked to or – or reprimanded or punished, I mean, I was the one who was removed, and Tyler – no consequences came to him. So that kind of signals to other people that you're fair fame. And Mr. Brouse certainly took advantage of that. And there were three specific

incidents over a span of time where the harassment was really awful, and during work hours, during operations.

(*Id*. at 3165-3166). She had hoped the email would eradicate any possible resentment

in order to truly start over with VRH. (Tr. 2/22/23, R. 90. Page ID # 3319-3320).

### 5. Ms. Schlosser loses her driving privileges

Shortly after making her complaint of harassment, Ms. Schlosser had her

driving privileges revoked after getting the work vehicle stuck one time. (Tr. 2/21/23,

R. 89, Page ID # 3168-3169). Mr. Alogna and Mr. Madden testified the importance

of documenting all delays in the daily dive logs (Tr. 2/22/23, R. 90, Page ID # 3479-

3480; Tr. 2/27/23, R. 92, Page ID # 3693). Yet VRH did not produce a single dive

log indicating Ms. Schlosser got the work vehicle stuck at any point, let alone on

multiple occasions. (Tr. 2/22/23, R. 90, Page ID # 3484-3485; Tr. 2/27/23, R. 92,

Page ID # 3712). However, at trial VRH acknowledged it was common for the truck

to get stuck. (Tr. 2/22/23, R. 90, Page ID # 3485). VRH also acknowledged numerous

dive logs showed the work vehicle being stuck at times when Ms. Schlosser was

either in the water or on the job site and could not have been the person who got the

vehicle stuck. (Tr. 2/22/23, R. 90, Page ID # 3484-3485; Tr. 2/23/23, R. 91, Page ID

# 3516-3517; Tr. 2/27/23, R. 92, Page ID # 3709; Pl. Appx., Pl. Trial Ex. 11,

Appx_0060).

VRH then attempted to pivot the argument by claiming it wasn't the fact Ms.

Schlosser got the vehicle stuck, but that she got it stuck in the MRS. (Tr. 2/22/23, R.

90, Page ID # 3483-3485; Tr. 2/27/23, R. 92, Page ID # 3709). Mr. Madden testified anyone who got the vehicle stuck in the MRS would lose their driving privileges. (Tr. 2/27/23, R. 92, Page ID # 3709). The only dive log showing the work vehicle being stuck in the MRS occurred while Ms. Schlosser was on the job site, and VRH acknowledged it could not have been Ms. Schlosser who was stuck in the MRS. (Tr. 2/23/23, R. 91, Page ID # 3516-3517; Tr. 2/27/23, R. 92, Page ID # 3710, Pl. Appx., Pl. Trial Ex. 11, Appx_0060). However, there is no record of any male employee being disciplined or counseled for this and Mr. Madden acknowledged no male employee lost their driving privileges for it. (Tr. 2/21/23, R. 89, Page ID # 3168-3169, 3171; Tr. 2/22/23, R. 90, Page ID # 3485; Tr. 2/27/23, R. 92, Page ID # 3710-3711). VRH acknowledged at trial no males had their driving privileges revoked, only Ms. Schlosser. (Tr. 2/22/23, R. 90, Page ID # 3485; Tr. 2/27/23, R. 92, Page ID # 3709). In fact, a male driver, Heath Nettleton, crashed the truck into a tree, causing damage to the vehicle, but was not disciplined. (Tr. 2/21/23, R. 89, Page ID # 3169; Tr. 2/22/23, R. 90, Page ID # 3485)

Losing her driving privileges had a drastic effect on Ms. Schlosser. The porta-jons on the project were too far away to walk, so Ms. Schlosser had to drive to the bathroom. (Tr. 2/21/23, R. 89, Page ID # 3167-3168). After losing her driving privileges, Ms. Schlosser either had to hold it, go behind a sand dune, or wait for another team member to drive her to the bathroom. (*Id.* at 3169). However, if another

team member had to drive her to the bathroom, it would shut the operation down. (*Id*. at 3169-3170). Since Ms. Schlosser was not permitted to dive, she could not relieve herself in the water like the males. (*Id*. at 3169-3170). After Ms. Schlosser was moved to the boat team, but still not permitted to dive, the team would have to take the boat back in and have someone drive her to the bathroom, again shutting down operations. (*Id*. at 3170-3171).

### 6. Ms. Schlosser resumes diving

Ms. Schlosser had been prohibited from diving from early in the project. (Tr. 2/27/23, R. 92, Page ID # 3699, 3719-3721). During that prohibition, all males were permitted to dive on multiple occasions. (*Id*. at 3718-3719). Ms. Schlosser only had the opportunity to dive again because her co-worker, Ben Roberts, made the decision to let her dive behind management's back. (Tr. 2/21/23, R. 89, Page ID # 3156; Tr. 2/27/23, R. 92, Page ID # 3719).

As the evidence showed during trial, after her teammates allowed her to dive again, Ms. Schlosser dove seven times between June 29, 2016 and July 18, 2016. (Pl. Appx., Pl. Trial Ex. 24, Appx_0007-9; Tr. 2/21/23, R. 89, Page ID # 3157). During these dives, Ms. Schlosser was objectively outperforming her male teammates. (Tr. 2/21/23, R. 89, Page ID # 3201-3203; Tr. 2/23/23, R. 91, Page ID # 3510-3512, 3520; Tr. 2/27/23, R. 92, Page ID # 3724-3726). Additionally, VRH acknowledged the

records showed Ms. Schlosser was continuing to improve. (Tr. 2/23/23, R. 91, Page ID # 3561, 3609-3610, Tr. 2/27/23, R. 92, Page ID # 3716).

### 7. Ms. Schlosser is again prohibited from diving

On July 18, 2016, VRH discovered Ms. Schlosser had been diving again. (Tr. 2/27/23, R. 92, Page ID # 3715, 3719, Pl. Appx., Pl. Trial Ex. 30, Appx_0044-45). Thereafter, Mr. Madden sent an email to the dive supervisors once again specifically prohibiting Ms. Schlosser from diving. (Tr. 2/27/23, R. 92, Page ID # 3727-3728, Pl. Appx., Pl. Trial Ex. 32, Appx_0084-85). At trial, Mr. Madden alleged the purpose of the email was to ensure the most productive divers were in the water. (Tr. 2/27/23, R. 92, Page ID # 3727). As part of its decision, VRH alleged Tyler Sanders rated Ms. Schlosser as the least productive diver. (Tr. 2/23/23, R. 91, Page ID # 3550; Tr. 2/27/23, R. 92, Page ID # 3732, Pl. Appx., Pl. Trial Ex. 32, Appx_0084-85). This is the same Tyler Sanders that Ms. Schlosser reported for harassment and who allegedly no longer had any involvement with Ms. Schlosser. Further, Mr. Sanders was on a different team and would not have been able to observe Ms. Schlosser's performance. (Tr. 2/27/23, R. 92, Page ID # 3734).

Both Mr. Madden and Mr. Alogna testified Ben Roberts was the ***least*** productive diver, which is supported by the dive summary. (Tr, 2/23/23, R. 91, Page ID # 3507, 3510-3511, Pl. Appx., Pl. Trial Ex. 24, Appx_0007-9). Yet he and Mr. Alogna acknowledged Ben Roberts, the least productive diver, was permitted to continue

diving, while ***only Ms. Schlosser*** was prohibited from diving. (Tr. 2/23/23, R. 91, Page ID # 3520-3521). Mr. Madden alleged he wasn't looking at individual divers, only overall team production, yet he singled Ms. Schlosser out and prohibited her from diving. (Tr. 2/27/23, R. 92, Page ID # 3716-3717). Mr. Madden, to his credit, acknowledged it was a mistake to single Ms. Schlosser out. (Tr. 2/27/23, R. 92, Page ID # 3729). Another diver, Chester Prince, told Ms. Schlosser she was prohibited from diving because of her gender. (Tr. 2/21/23, R. 89, Page ID # 3192). Once again, being removed form the diving rotation resulted in Ms. Schlosser being the lowest paid member on her team. (*See* Transcript 2/21/23, R. 89, Page ID # 3141–3142, 3204-3206; Transcript 2/22/23, R. 90, Page ID # 3281–3283).

### 8.  Harassment by Aaron Brouse

On July 19, 2016, while Ms. Schlosser was performing her tender duties, Aaron Brouse physically pushed her out of his way and began yelling at her aggressively. (Tr. 2/21/23, R. 89, Page ID # 3172). Ms. Schlosser testified Mr. Brouse was angry, his face was beet red, screaming in her face, "nobody fucking likes you," called her a "slimy bitch," told her, "they will fire you before they fire me," and "You want an enemy, I'll give you one. I'll make your life a living hell." (*Id*. at 3173, 3176, 3181). Ms. Schlosser estimated this verbal abuse lasted approximately an hour. (*Id*. at 3173). Dive Supervisor John Bigos was standing in close proximity but did nothing to stop the

14

verbal assault on Ms. Schlosser. (Tr. 2/21/23, R. 89, Page ID # 3173; Tr. 2/22/23, R. 90, Page ID # 3327).

Mr. Baril, who is not trained in human resources, had Mr. Brouse provide a written statement and asked Ms. Schlosser if she wanted to write a statement. Ms. Schlosser testified she didn't write a statement because she didn't want to be the blame for production stopping, which would again make her the problem. (Tr. 2/21/23, R. 89, Page ID # 3176, Tr. 2/22/23, R. 90, Page ID # 3321-3322, 3326). Additionally, she witnessed Mr. Baril and Mr. Brouse "smoking and joking" prior to asking her to write a statement. (Tr. a 2/22/23, R. 90, Page ID # 3327-3328). Ms. Schlosser testified, "it was essentially a way of Aaron [Brouse] showing me that what he did was okay, because look at him at the – talking to the supervisors, having a good time, while I'm sitting here in the corner alienated." (*Id*. at 3328).

Mr. Baril did nothing to intervene while Mr. Brouse verbally attacked her for an hour, so Ms. Schlosser had no reason to believe anything would be done afterward. (*Id*. at 3322). In fact, Mr. Baril emailed Ms. Backes and painted Ms. Schlosser as the aggressor. (Tr. 2/22/23, R. 90, Page ID # 3412-3413). Even though Mr. Baril alleged the encounter involved violence, Ms. Backes still did nothing to investigate. (Tr. 2/22/23, R. 90, Page ID # 3323, 3329, 3386). She also admitted Mr. Baril is not trained in human resources. (*Id*. at 3437). Ms. Backes claimed she did not follow-up with Ms. Schlosser because Mr. Baril had already addressed the issue,

but also admitted she didn't take any measure to verify whether that was true. (Id. at 3384-3386).

Mr. Baril's alleged admonition to Mr. Brouse and Ms. Schlosser clearly was not sufficient because Mr. Brouse did not stop harassing Ms. Schlosser. On July 27, 2016, Mr. Brouse again initiated a verbal assault toward Ms. Schlosser on the boat, including again calling her a bitch. (Transcript 2/21/23, R. 89, Page ID # 3181).

### 9. Ms. Schlosser's resignation

Ms. Schlosser testified that the July 27, 2016 incident with Mr. Brouse was, "the straw that broke the camel's back, so to speak. I was defeated at that point. And, I mean, I was crying every night when I went home. I saw there was no way out. I found out I was going to be let go." (Tr. 2/21/23, R.89, Page ID # 3186, 3189). Heath Nettleton informed Ms. Schlosser that VRH was planning to terminate her and have her escorted off the property by armed security. (Tr. 2/21/23, R. 89, Page ID # 3189-3190; Tr. 2/22/23, R. 90, Page ID # 3345). Rather than dealing with the harassment and embarrassment of being escorted off the property, Ms. Schlosser tendered her resignation. (Tr. 2/21/23, R. 89, Page ID # 3189-3190; Tr. 2/22/23, R. 90, Page ID # 3345).

Ms. Schlosser resignation email detailed all of the harassment and discrimination she had endured during her ten (10) weeks of employment. (Pl. Appx., Pl. Trial Ex. 33, Appx_0086-89). The resignation letter discussed, (1) the

harassment by Mr. Sanders, (2) the harassment by Mr. Brouse, (3) how she was repeatedly prohibited from diving which made her the lowest paid member of the team, (4) how she was the only female, only person prohibited from driving, and the lowest paid person on the job, and how her gender now feels, itself, derogatory, and how she was regularly and routinely treated different than her male counterparts. (*Id*.).

### 10. Defendant still did not investigate Ms. Schlosser's allegations

Ms. Backes did not investigate any of the allegations in Ms. Schlosser's resignation letter. Ms. Backes testified she wasn't concerned with Mr. Sanders harassing other employees because, "by this time she was already off the island. And she made it clear she didn't want to work for us…" (Transcript 2/22/23, R. 90, Page ID # 3392-3393). Similarly, Ms. Backes made no effort to investigate the allegations against Mr. Brouse, or any witnesses, because she believed it was isolated to Ms. Schlosser. (*Id*. at 3393-3395). Despite the resignation letter raising allegations of harassment and discrimination, Mr. Backes did not ask Mr. Sanders, Mr. Brouse, or any of her co-workers about her claims. (Transcript 2/22/23, R. 90, Page ID # 3396, 3410). She never asked anyone on the team if Ms. Schlosser had been treated differently because she was a woman. (*Id*. at 3396). Similarly, Ms. Backes did not follow-up with Ms. Schlosser about her allegations. (*Id*. at 3396-3397).

Similarly, Mr. Adler made no effort to investigate the allegations in Ms. Schlosser's resignation letter. (Tr. 2/23/23, R. 91, Page ID # 3624-3625, 3630-3631, 3633, 3634). In fact, Mr. Adler felt relieved when Ms. Schlosser resigned, and it was one less problem to deal with. (*Id*. at 3626, 3627).

### III.    SUMMARY OF THE ARGUMENT

The District Court correctly denied VRH's renewed motion for judgment as a matter of law. The jury in this matter heard evidence and testimony from Ms. Schlosser and four management level witnesses employed by VRH. The jury, after reviewing the evidence, listening to testimony, and making credibility determinations, correctly found Ms. Schlosser had been subjected to a sexually hostile work environment based on her gender and that VRH was liable. VRH ignores its obligation to view the evidence and draw all reasonable inferences in Ms. Schlosser's favor. VRH also attempts to make credibility determinations in its own favor.

The District Court correctly found Ms. Schlosser proffered sufficient evidence from which the jury reasonably concluded was subjected to a hostile work environment based on her gender. The District Court correctly followed settled law by analyzing the totality of the circumstances and reviewing the work environment as a whole. In doing so, the District Court correctly considered all aspects of Ms. Schlosser's employment from the knot test on her first day, the verbal counseling

she received, being the sole person prohibited from diving, being the sole person prohibited from driving a company vehicle, the harassment she was subjected to by her dive supervisor, the harassment she was subjected to by her co-workers, and the tangible employment actions she was subjected to. VRH attempts to limit and/or ignore significant facts and evidence in an effort to minimize the cumulative effect of the harassment Ms. Schlosser endured. VRH also ignores settled law in attempting to segregate each incident of harassment to divorce them of context and deprive them of their full force. VRH also attempts to ignore significant evidence, and fails to draw all reasonable inferences in Ms. Schlosser's favor, that but for her gender, she would not have been subjected to the severe and pervasive harassment.

The District Court correctly found Ms. Schlosser proffered sufficient evidence to impose employer liability. Specifically, the District Court found Ms. Schlosser proffered sufficient evidence which the jury could reasonably conclude her dive supervisor, Tyler Sanders, in coordination with other VRH supervisors, took tangible employment actions against her. Similarly, the District Court correctly found Ms. Schlosser proffered sufficient evidence which a reasonable jury could conclude VRH knew, or should have known, that her co-worker, Aaron Brouse, subjected her to a hostile work environment, but VRH was indifferent to his conduct and failed to take action reasonably calculated to end the harassment.

## IV.    STANDARD OF REVIEW

This Court reviews de novo a district court's decision to deny a renewed motion for judgment as a matter of law under Rule 50(b), and reverse the denial "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Equal Emp't Opportunity Comm'n v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citation omitted). In conducting this review, "[the Court] may not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010) (citation omitted). For VRHabilis to succeed on its challenge, it must "overcome the substantial deference owed a jury verdict." *Radvansky v. City of Olmsted*, 496 F.3d 609, 614 (6th Cir. 2007).

## V. ARGUMENT

### A. The District Court correctly found Ms. Schlosser proffered sufficient evidence she was subjected to a hostile work environment based on her gender.

To establish a hostile-work-environment claim under Title VII, a plaintiff must prove that: "(1) she is a member of a protected class; (2) she was subjected to unwelcome [ ] gender harassment; (3) the harassment was based the employee's protected status, such as gender; (4) the harassment unreasonably interfered with

work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Lemanna v. Dayton Police Dept.*, 788 F. App'x 1003, 1008–09 (6th Cir. 2019). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Newton v. Ohio Dep't of Rehab. & Correction-Toledo Corr. Inst.*, 496 F. App'x 558, 563 (6th Cir. 2012).

However, a defendant appealing a jury verdict in a Title VII case may not rely on the argument that the plaintiff failed to prove a prima facie case. "Following a trial on the merits, the district court ... cannot return to a consideration of whether plaintiff has proven its prima facie case. This is a preliminary matter which cannot be revisited at a later time." *Equal Emp't Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). In *Imwalle*, the Court explained that the court's duty after a trial on the merits is to "determine the ultimate question"; in this case, whether Ms. Schlosser produced sufficient evidence to support the jury's finding that VRH created a sexually hostile work environment. *Imwalle*, 515 F.3d at 545–46. "In reaching [the] determination on the ultimate question, [this court] may review all of the evidence in the record, including the evidence supporting [Schlosser's] prima facie case." *Imwalle*, 515 F.3d at 546 (citation and internal quotation marks omitted).

1. **The District Court correctly found Ms. Schlosser proffered sufficient evidence for which the jury reasonably concluded she was subjected to severe and pervasive harassment.**

Hostile-work- environment claims under Title VII involve repeated conduct and require the plaintiff to demonstrate that the workplace is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).

In determining whether a defendant's sex- or gender-based conduct is sufficiently severe or pervasive to constitute a hostile or abusive work environment, courts look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *see also Williams*, 187 F.3d at 562. To that end, courts should not "divide[ ] and categorize[ ]" reported incidents in a way that divorces them of context and deprives them of their full force. *Williams*, 187 F.3d at 562.

As the Sixth Circuit has explained, "the totality-of-the-circumstances test mandates that courts consider the harassment by all perpetrators combined when analyzing whether a plaintiff has alleged the existence of a hostile environment,"

and, "even where individual instances of sexual harassment do not on their own create a hostile work environment, the accumulated effect of such incidents may result in a Title VII violation." *Id*. at 563–64. "A work environment viewed as a whole may satisfy the legal definition of an abusive work environment, for the purposes of a hostile environment claim, even though no single episode crosses the Title VII threshold." *Id*. at 564.

Ms. Schlosser proffered substantial evidence in support of her hostile work environment claim. These include, but are not limited to:

- Being asked to perform a knot test on her first day that her male counterparts were not asked to perform and instructed to go practice tying knots. (Tr. 2/21/23, R. 89, Page ID # 3144-3145, 3148, 3227; Tr. 2/22/23, R. 90, Page ID # 3470-3471).

- Receiving a counseling for "substandard performance" for practicing tying knots, even though she was practicing tying knots at her supervisors direction. (Tr. 2/21/23, R. 89, Page ID # 3148, 3150; ; Pl. Appx., Pl. Trial Ex. 14, Appx_0005-6).

- During her first dive, she was cited for having to come back to add weight to her weight belt. A far more experienced male diver also had to come back to add weight to his weight belt the same day, but he was not cited. (Tr. 2/21/23, R. 89, Page ID # 3145-3147; Tr. 2/27/23, R. 92, Page ID # 3696-3698).

- After that one dive, VRH instructed supervisors to keep Ms. Schlosser out of the dive rotation because she was not pulling her weight. (Tr. 2/21/23, R. 89, Page ID # 3148; Tr. 2/27/23, R. 92, Page ID # 3694-3697).

- After receiving counseling, she attempted to discuss her performance with her team. Ms. Schlosser's dive supervisor, Tyler Sanders, yelled at her to "stop talking" because she was "not a real diver," "never worked a real job," "her opinion doesn't matter," and she needed "to keep [her] head down" and "shut the F up." (Tr. 2/21/23, R. 89, Page

23

ID # 3155).

- Due to the nature of the job, VRH employees lived together and drove to work together, and Sanders verbally abused Ms. Schlosser before work, during work, and after work. (*Id*. at 3157-3158, 3239).

- Ms. Schlosser had her driving privileges revoked for getting a vehicle stuck, even though other male employees who got vehicles stuck did not have their driving privileges revoked. (Tr. 2/21/23, R. 89, Page ID # 3168-3169).

- Ms. Schlosser was prohibited from diving despite outperforming male teammates who were allowed to continue diving. (Tr. 2/22/23, R. 90, Page ID # 3484-3485; Tr. 2/23/23, R. 91, Page ID # 3516-3517; Tr. 2/27/23, R. 92, Page ID # 3709-3710).

- As a result of being removed from the dive rotation, and relegated to solely tender duties, Ms. Schlosser was the lowest paid person on the team. (*See* Transcript 2/21/23, R. 89, Page ID # 3141–3142, 3204-3206; Transcript 2/22/23, R. 90, Page ID # 3281–3283).

- While performing tender duties, Aaron Brouse, another diver, physically pushed Ms. Schlosser and scream obscenities at her for approximately one hour, including yelling at her that, "nobody fucking likes you," calling her a "slimy bitch," and telling her that "they [VRH] will fire you before they fire me," and that "[y]ou want an enemy, I'll give you one. I'll make your life a living hell." (Tr. 2/21/23, R. 89, Page ID # 3173; Tr. 2/22/23, R. 90, Page ID # 3327).

- Ms. Schlosser's supervisor, John Bigos, and site supervisor, John Baril, observed Mr. Brouse's behavior and did nothing to stop it. (Tr. 2/21/23, R. 89, Page ID # 3173; Tr. 2/22/23, R. 90, Page ID # 3327).

- Despite seeing Brouse verbally abuse Ms. Schlosser for about an hour, Mr. Brouse sent an email to human resources portraying Ms. Schlosser as the aggressor. (Tr. 2/22/23, R. 90, Page ID # 3412-3413).

This is more than sufficient to support Ms. Schlosser's claim of severe and

pervasive harassment.

### 2. The District Court correctly found Ms. Schlosser proffered sufficient evidence for which the jury reasonably found the harassment was based on her gender.

To establish that the employee was subjected to harassment based on her gender, she must show that "but for the fact of her sex, she would not have been the object of harassment." *Williams v. General Motors Corp.,* 187 F.3d 553, 560 (6th Cir. 1999). "[C]onduct underlying a sexual harassment claim," however, "need not be overtly sexual in nature." *Id*. "[N]on-sexual conduct may be illegally sex-based where it evinces anti-female animus," and "[h]arassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus satisfies the 'based on sex' requirement." *Id*. (internal quotations and citations omitted). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the opposite sex are not exposed. *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998).

Any unequal treatment of an employee that would not occur but for the employee's gender" may be considered in the hostile environment analysis. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (quoting *Williams*, 187 F.3d at 565). But Title VII is directed only at gender discrimination and "does not prohibit all verbal or physical harassment in the workplace." *Id.* (quoting *Oncale*, 523 U.S. at 80). Facially neutral incidents may be considered in the hostile work

environment analysis "when there is 'some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013) (quoting *Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir. 2002)).

### i.   The knot test was based on Ms. Schlosser's gender.

On Ms. Schlosser's first day, Mr. Alogna asked Ms. Schlosser to perform a knot test. (Tr. 2/21/23, R. 89, Page ID # 3144-3145, 3148, 3227). Mr. Alogna acknowledged he did not ask any males to perform a knot test. (Tr. 2/22/23, R. 90, Page ID # 3470-3471). Mr. Alogna then instructed Ms. Schlosser to go practice tying knots while her teammates were performing other duties. Alogna failed to tell anyone else of his instruction to Ms. Schlosser. (Transcript 2/22/23, R. 90, Page ID # 3470-3471). Ms. Schlosser testified this made her feel singled out and made her look like she wasn't being a team player. (Transcript 2/21/23, R. 89, Page ID # 3145). Mr. Adler counselled Mr. Schlosser and cited her tying knots while the rest of the team was working, as she had previously been instructed to do by Mr. Alogna. (*Id*. at 3148, 3150).

### ii.   Mr. Sanders' harassment was based on Ms. Schlosser's gender.

Mr. Sanders verbally abused Ms. Schlosser on numerous occasions, both during work and during non-work hours, which included statements suggesting an anti-female animus. (Tr. 2/21/23, R. 89, Page ID # 3155). VRH's COO, Elliot Adler,

26

testified Mr. Sanders did not treat his male counterparts the same way. (Tr. 2/23/23, R. 91, Page ID # 3591-3592, 3670, 3680). Mr. Adler further testified that Ms. Schlosser's teammates supported her claim that Mr. Sanders singled her out and treated her differently. (Tr. 2/23/23, R. 91, Page ID # 3615-3617, 3619-3620).

### iii.    Ms. Schlosser had her driving privileges revoked because of her gender.

Ms. Schlosser had her driving privileges revoked after getting the work vehicle stuck one time. (Tr. 2/21/23, R. 89, Page ID # 3168-3169). However, at trial VRH acknowledged it was common for the truck to get stuck. (Tr. 2/22/23, R. 90, Page ID # 3485). VRH also acknowledged numerous dive logs showed the work vehicle being stuck at times when Ms. Schlosser was either in the water or on the job site and could not have been the person who got the vehicle stuck. (Tr. 2/22/23, R. 90, Page ID # 3484-3485; Tr. 2/23/23, R. 91, Page ID # 3516-3517; Tr. 2/27/23, R. 92, Page ID # 3709). However, at trial VRH acknowledged it was common for the truck to get stuck. (Tr. 2/22/23, R. 90, Page ID # 3485). VRH also acknowledged numerous dive logs showed the work vehicle being stuck at times when Ms. Schlosser was either in the water or on the job site and could not have been the person who got the vehicle stuck. (Tr. 2/22/23, R. 90, Page ID # 3484-3485; Tr. 2/23/23, R. 91, Page ID # 3516-3517; Tr. 2/27/23, R. 92, Page ID # 3709

### iv.   Ms. Schlosser was removed from the dive rotation because of her gender.

On May 26, 2016, Ms. Schlosser performed her first dive, which she admits did not go as well as she had hoped. (Tr. 2/21/23, R. 89, Page ID # 3145). Shortly after entering the water, Ms. Schlosser had to exit the water to add more weight to her weight belt. (*Id*. at 3145-3146). Travis Watts, a far more experienced diver, also had to exit the water to add more weight to his weight belt that morning. (*Id*. at 3146-3147). Ron Madden, the Project Manager, cited Ms. Schlosser having to add weight to her weight belt as a reason to remove her from the dive rotation moving forward. (Tr. 2/27/23, R. 92, Page ID # 3696-3698). Importantly, Mr. Madden had no dive experience, the Cape Pogue Project was his first project of dive operations, and he admitted he had no qualifications to evaluate diving performance. (*Id*. at 3695). Mr. Adler then informed Ms. Schlosser she would not be diving anymore because she was not pulling her weight. (Tr. 2/21/23, R. 89, Page ID # 3148). Mr. Madden admitted that he, Mr. Alogna, and Mr. Adler instructed the dive supervisors to keep Ms. Schlosser out of the dive rotation. (Tr. 2/27/23, R. 92, Page ID # 3694-3697).

Ms. Schlosser had been prohibited from diving from early in the project. (Tr. 2/27/23, R. 92, Page ID # 3699, 3719-3721). During that prohibition, all males were permitted to dive on multiple occasions. (*Id*. at 3718-3719). Ms. Schlosser only had the opportunity to dive again because her co-workers made the decision to let her dive

behind management's back. (Tr. 2/21/23, R. 89, Page ID # 3156; Tr. 2/27/23, R. 92, Page ID # 3719).

Once Ms. Schlosser resumed diving, she performed as well, if not better, than her male teammates. (Tr. 2/21/23, R. 89, Page ID # 3201-3203; Tr. 2/23/23, R. 91, Page ID # 3510-3512, 3520; Tr. 2/27/23, R. 92, Page ID # 3724-3726). Additionally, VRH acknowledged the records showed Ms. Schlosser was continuing to improve. (Tr. 2/23/23, R. 91, Page ID # 3561, 3609-3610, Tr. 2/27/23, R. 92, Page ID # 3716).

On July 18, 2016, VRH discovered Ms. Schlosser had been diving again. (Tr. 2/27/23, R. 92, Page ID # 3715, 3719, Pl. Appx., Pl. Trial Ex. 30, Appx_0044-45). Thereafter, Mr. Madden sent an email to the dive supervisors once again specifically prohibiting Ms. Schlosser from diving. (Tr. 2/27/23, R. 92, Page ID # 3727-3728, Pl. Appx., Pl. Trial Ex. 32, Appx_0084-85). As part of its decision, VRH alleged Tyler Sanders rated Ms. Schlosser as the least productive diver. (Tr. 2/23/23, R. 91, Page ID # 3550; Tr. 2/27/23, R. 92, Page ID # 3732, Pl. Appx., Pl. Trial Ex. 32, Appx_0084-85). This is the same Tyler Sanders that Ms. Schlosser reported for harassment and who allegedly no longer had any involvement with Ms. Schlosser. Further, Mr. Sanders was on a different team and would not have been able to observe Ms. Schlosser's performance. (Tr. 2/27/23, R. 92, Page ID # 3734).

Both Mr. Madden and Mr. Alogna testified Ben Roberts was the *least* productive diver, which is supported by the dive summary. (Tr, 2/23/23, R. 91, Page ID # 3507,

3510-3511, Pl. Appx., Pl. Trial Ex. 24, Appx_0007-9). Yet he and Mr. Alogna acknowledged Ben Roberts, the least productive diver, was permitted to continue diving, while ***only Ms. Schlosser*** was prohibited from diving. (Tr. 2/23/23, R. 91, Page ID # 3520-3521). Mr. Madden alleged he wasn't looking at individual divers, only overall team production, yet he singled Ms. Schlosser out and prohibited her from diving. (Tr. 2/27/23, R. 92, Page ID # 3716-3717). ***Mr. Madden acknowledged it was a mistake to single Ms. Schlosser out***. (Tr. 2/27/23, R. 92, Page ID # 3729). Further, another diver, ***Chester Prince, told Ms. Schlosser she was prohibited from diving because of her gender***. (Tr. 2/21/23, R. 89, Page ID # 3192).

### v.    Aaron Brouse's harassment was based on Ms. Schlosser's gender.

On July 19, 2016, Ms. Schlosser was verbally and physically assaulted by Mr. Brouse. According to Ms. Schlosser, Mr. Brouse was angry, ***his face was beet red, screaming in her face***, ***"nobody fucking likes you,"*** called her a "***slimy bitch***," told her, ***"they will fire you before they fire me,"*** and "***You want an enemy, I'll give you one. I'll make your life a living hell."*** (*Id*. at 3173, 3176, 3181). Ms. Schlosser estimated this verbal abuse lasted approximately an hour. (*Id*. at 3173). On July 27, 2016, Mr. Brouse again initiated a verbal assault toward Ms. Schlosser, again referring to her as a ***bitch***. (Tr. 2/21/23, R. 89, Page ID # 3181).

Both Mr. Bigos, a dive supervisor, and Mr. Baril, site supervisor, did nothing to intervene while Mr. Brouse verbally attacked Ms. Schlosser for an hour, so she

had no reason to believe anything would be done afterward. (*Id*. at 3322). In fact, Mr. Baril emailed human resources and portrayed Ms. Schlosser as the aggressor, with no reference to Brouse's verbal assault on Ms. Schlosser. (Tr. 2/22/23, R. 90, Page ID # 3412-3413).

All of these events show a pattern of Ms. Schlosser being treated differently than her male counterparts. Even if some of the issues are not on their face gender based, "[f]acially neutral incidents may be included" in a hostile-work-environment analysis of the totality of the circumstances when there is "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory."" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013) (*quoting Alfano v. Costello,* 294 F.3d 365, 378 (2d Cir.2002). Ms. Schlosser has proffered substantial evidence for inferring all of these incidents were discriminatory.

**B. The District Court correctly found Ms. Schlosser proffered sufficient evidence to impose employer liability.**

Whether an employer is liable for a harassing employee's conduct is based, in part, on the status of the harasser. *Wyatt v. Nissan N. Am.*, 900 F.3d 400, 412 (6th Cir. 2021). If the harasser is a co-worker, the employer is liable "if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). This means that an employer is liable for coworker harassment only "if it knew or should have known of the charged sexual harassment and failed to

implement prompt corrective action," thereby exhibiting "indifference or unreasonableness in light of the facts the employer knew or should have known." *Doe v. City of Detroit, Mich*., 3 F.4th 294, 301 (6th Cir. 2021) (citations omitted). "An employer's response is generally adequate if it is reasonably calculated to end the harassment." *Id*. (internal quotations omitted).

If the harasser is a supervisor and the harassment culminates in a tangible employment action, however, the employer is strictly liable. *Id*. If a supervisor's harassment does not result in a tangible employment action, the employer "may escape liability by establishing," as an affirmative defense, that: (1) it "exercised reasonable care to prevent and correct any sexually harassing behavior," and (2) the employee "unreasonably failed to take advantage of preventative or corrective opportunities" the employer provided. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). "[A]n employee is a supervisor for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim" of the harassment. *Vance*, 570 U.S. at 424. A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

**1. The District Court correctly found Ms. Schlosser proffered sufficient proof which the jury could reasonably conclude her dive supervisor, Tyler Sanders, in coordination with other VRH supervisors, took tangible employment actions against her.**

As previously addressed, Ms. Schlosser proffered sufficient evidence that Tyler Sanders, her dive supervisor, engaged in harassing behavior. (Tr. 2/21/23, R. 89, Page ID # 3158). Mr. Sanders, as a dive supervisor, assigned duties on a day-to-day basis and decided who would perform diver, standby diver, and tender because "diving supervisors are the best judge of who is capable." (Tr. 2/22/23, R. 90, Page ID # 3460; Tr. 2/23/23, R. 91, Page ID # 3549). Mr. Sanders, as the dive supervisor, exercised authority over the conditions of Ms. Schlosser's employment. To that end, Mr. Sanders, and upper management, relegated Plaintiff to performing solely tender duties which resulted in her performing significantly different responsibilities and receiving a lower hourly rate than her male co-workers who were permitted to dive and standby dive. (Tr. 2/21/23, R. 89, Page ID # 3201–3203; Tr. 2/23/23, R. 91, Page ID # 3507, 3510–3511, 3520–3521, 3550; Tr. 2/27/23, R. 92, Page ID # 3699, 3718–3721, 3726–3734). Additionally, Mr. Sanders threatened Ms. Schlosser's job. (Tr. 2/21/23, R. 89, Page ID # 3258).

Additionally, the evidence at trial showed that after Ms. Schlosser reported Mr. Sanders' harassment, the decision to transfer Ms. Schlosser to a different team was at Mr. Sanders' request. (Pl. Appx., Pl. Trial Ex. 29, Appx_0041). Between Mr. Sanders' abusive harassment, relegating Plaintiff to tender duties, and

recommending that she be "counselled and switched off [his] crew…," this was sufficient for the jury to reasonably determine she was subjected to a tangible employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998) (A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in wages or benefits.) By being relegated to solely tender duties, Ms. Schlosser was paid significantly less than her male comparators. (*See* Transcript 2/21/23, R. 89, Page ID # 3141–3142, 3204-3206; Transcript 2/22/23, R. 90, Page ID # 3281–3283). Further, Ms. Schlosser's constructive discharge is also a tangible employment action.

Ms. Schlosser presented sufficient evidence for which the jury reasonably concluded she was harassed by a supervisor, Mr. Sanders, and was subjected to a tangible employment action. Further, Mr. Adler, Mr. Madden, and Mr. Alogna, all supervisors, in coordination with Sanders, and who all knew Ms. Schlosser had reported for harassment, subjected Ms Schlosser to a tangible employment action by removing her from the dive rotation. As a result, VRH cannot rely on the *Faragher-Ellerth* affirmative defense.

**2. The District Court correctly found Ms. Schlosser proffered sufficient evidence which a reasonable jury could conclude VRH was liable for co-worker harassment.**

VRH is also liable for Mr. Brouse's harassment of Ms. Schlosser because its supervisors witnessed the harassment, were indifferent to to Brouse' harassment, and failed to take action reasonably calculated to end the harassment. *Doe v. City of Detroit, Mich*., 3 F.4th 294, 301 (6th Cir. 2021). John Bigos, a dive supervisor, and Paul Baril, a site supervisor, witnessed Brouse physically pushed her and verbally berated her, including yelling at her that "nobody fucking likes you" and calling her a "slimy bitch." (Transcript 2/21/23, R. 89, Page ID # 3172–3174, 3176; Transcript 2/22/23, R. 90, Page ID # 3320, 3324– 3326, 3322).

While VRH attempts to claim it took reasonable action by asking for statements from Brouse and Schlosser, this clearly was not sufficient. Mr. Baril, who is not trained in human resources, had Mr. Brouse provide a written statement and asked Ms. Schlosser if she wanted to write a statement. Ms. Schlosser testified she didn't write a statement because she didn't want to be the blame for production stopping, which would again make her the problem. (Tr. 2/21/23, R. 89, Page ID # 3176, Tr. 2/22/23, R. 90, Page ID # 3321-3322, 3326). Additionally, she witnessed Mr. Baril and Mr. Brouse "smoking and joking" prior to asking her to write a statement. (Tr. a 2/22/23, R. 90, Page ID # 3327-3328). Ms. Schlosser testified, "it was essentially a way of Aaron [Brouse] showing me that what he did was okay,

because look at him at the – talking to the supervisors, having a good time, while I'm sitting here in the corner alienated." (*Id*. at 3328).

Mr. Baril did nothing to intervene while Mr. Brouse verbally attacked her for an hour, so Ms. Schlosser had no reason to believe anything would be done afterward. (*Id*. at 3322). In fact, Mr. Baril emailed Ms. Backes and painted Ms. Schlosser as the aggressor. (Tr. 2/22/23, R. 90, Page ID # 3412-3413). Even though Mr. Baril alleged the encounter involved violence, Ms. Backes still did nothing to investigate. (Tr. 2/22/23, R. 90, Page ID # 3323, 3329, 3386). She also admitted Mr. Baril is not trained in human resources. (*Id*. at 3437). Ms. Backes claimed she did not follow-up with Ms. Schlosser because Mr. Baril had already addressed the issue, but also admitted she didn't take any measure to verify whether that was true. (Id. at 3384-3386).

Mr. Baril's alleged admonition to Mr. Brouse and Ms. Schlosser clearly was not sufficient because Mr. Brouse did not stop harassing Ms. Schlosser. On July 27, 2016, Mr. Brouse again initiated a verbal assault toward Ms. Schlosser on the boat, including again calling her a bitch. (Transcript 2/21/23, R. 89, Page ID # 3181). Ms. Schlosser testified the abuse continued on a "daily basis," noting: "[m]y supervisor knew because they witnessed it. Everyone in the house knew because we all lived together. Everyone on-site was aware of this abuse. (Tr. 2/22/23, R. 90, Page ID #3331).

This evidence was sufficient for a reasonable jury to conclude VRH as indifferent to Brouse's harassment and failed to take action reasonably calculated to end the harassment.

### 3. VRH's investigation exhibits indifference to harassment.

#### i. The June 20, 2016 investigation was a sham investigation.

VRH asserts it timely investigated Ms. Schlosser's claims and took immediate action to stop the harassment. This is false.

On Friday, June 17, 2016, Ms. Schlosser reported Mr. Sanders' harassment to Defendant's human resources, Diane Backes. (Tr. 2/21/23, R. 89, Page ID # 3158; Tr. 2/22/23, R. 90, Page ID # 3371; Pl. Appx., Pl. Trial Ex. 26, Appx_0039-40). Ms. Backes initially responded to Ms. Schlosser stating, "Confirming I have received your email and your official report. I am currently on vacation and will be back in the office on Monday. I will look into this matter." (*Id*. at 3373; Pl. Ex. 26). Shortly after, Ms. Backes forwarded Ms. Schlosser complaint to Mr. Adler, Mr. Madden, and Mr. Alogna with the opening, "Please the email from Ariel below. ***I know there has been talk about replacing her…*** (Id. at 3442-3444; Pl. Ex. 26).

Ms. Backes testified she has previously gone to the job site when there is a complaint, but she did not go to the job site to address Ms. Schlosser's claims. (Tr. 2/22/23, R. 90, Page ID # 3446-3447). Mr. Adler and Ms. Backes claimed this is because Ms. Backes was out of the country. (*Id*. at 3435; Tr. 2/23/23, R. 91, Page ID

# 3614). Mr. Adler and Mr. Madden testified that the investigation occurred on Monday, June 20, 2016. (Tr. 2/23/23, R. 91, Page ID # 3669; Tr. 2/27/23, R. 92, Page ID # 3746). By her own admission, and her initial email response to Ms. Schlosser, Ms Backes returned to work Monday, June 20, 2016. (Tr. 2/22/23, R. 90, Page ID # 3373).

Despite her availability, Ms. Backes did not investigate any of Ms. Schlosser's claims. (Tr. 2/22/23, R. 90, Page ID # 3375, 3377-3380). Rather, Mr. Adler conducted the investigation into Ms. Schlosser's complaint. Ms. Backes did not do any independent investigation to determine whether Mr. Adler handled the investigation properly. (Tr. 2/22/23, R. 90, Page ID # 3436).

Mr. Adler acknowledged the investigation was related to sex/gender-based harassment. (Tr. 2/23/23, R. 91, Page ID # 3637-3638). During his alleged investigation, Mr. Adler interviewed all the males before he ever spoke to Ms. Schlosser. (Tr. 2/23/23, R. 91, Page ID # 3677-3678). Mr. Adler claimed he interviewed Ms. Schlosser last because he did not want it to appear that his investigation was biased or that he presumed her complaint was honest. (Tr. 2/23/23, R. 91, Page ID # 3677-3678). Yet, he did not believe interviewing the males first could suggest he favored their opinions over Ms. Schlosser's claims. (Tr. 2/23/23, R. 91, Page ID # 3677-3678). Ms. Schlosser testified when she finally spoke with Mr. Adler

that she "was scared and kind of felt pressured to say that everything was okay." (Tr. 2/21/23, R. 89, Page ID # 3163).

At trial, Mr. Adler testified Ms. Schlosser's teammates supported her claim that Mr. Sander's singled her out and treated her differently. (Tr. 2/23/23, R. 91, Page ID # 3615-3617, 3619-3620). He even acknowledged Mr. Sanders' conduct was harassing and he found Ms. Schlosser's claims were valid. (Tr. 2/23/23, R. 91, Page ID # 3670, 3680). He also testified Mr. Sanders did not treat any of the males this way. (Tr. 2/23/23, R. 91, Page ID # 3591-3592). Despite that, Mr. Sanders did not receive any formal discipline. (Tr. 2/23/23, R. 91, Page ID # 3581-3582, 3587, 3614, 3680-3681). In fact, Mr. Adler testified Mr. Sanders would have to harass Ms. Schlosser multiple times and be witnessed by him before Mr. Sanders received formal discipline. (Tr. 2/23/23, R. 91, Page ID # 3588, 3681). Instead, at Mr. Sanders' request, Ms. Schlosser was removed from his team and counselled. (Pl. Appx., Pl. Trial Ex. 29, Appx_0041; Transcript 2/21/23, R. 89, Page ID # 3159; Transcript 2/22/23, R. 90, Page ID # 3259, 3363, 3366-3367, 3381).

As a result of the complaint, Ms. Schlosser was moved from Mr. Sanders' team to John Bigos' team. (Tr. 2/21/23, R. 89, Page ID # 3159, 3259, 3261, 3164). Additionally, Mr. Sanders was moved to management housing. (*Id*. at 3163). This case is analogous to *West v. Tyson Foods, Inc*., 374 F. App'x 624, 633 (6th Cir. 2010). In *West*, this Court held:

However, in response to West's complaints against numerous individuals, two identified by name and others by sight, of frequent harassing activities that were both vulgar and threatening, and that clearly upset West, Parks' only response was to move West to a different place on the processing floor, and, possibly, to watch her occasionally for the next few days. Assuming that the harassment proceeded as West claims, as we must, this action was woefully insufficient, especially in light of Parks' directive to West to refrain from reporting the matter to HR.

and,

Tyson claims that because West did not complain to Parks a second time, Parks reasonably believed he had resolved the situation. However, there is sufficient evidence in the record for a jury to have reasonably found that Parks could not have reasonably believed the situation to be resolved after merely assigning West to a different work location.

*West v. Tyson Foods, Inc.*, 374 F. App'x 624, 633 (6th Cir. 2010). Like *West,* Ms. Schlosser reported the harassment and VRH's resolution was to move Ms. Schlosser to another team. As this Court held in *West,* "[e]ven separating the harasser and victim immediately may not be enough without further action on the employer's part. *West v. Tyson Foods, Inc.,* 374 Fed.Appx. 624, 633 (6th Cir.2010).

Similarly, VRH argues Ms. Schlosser did not report the continued harassment. However, "[a] plaintiff can be subjected to harassment sufficiently severe or pervasive as to constitute a hostile environment and yet, for a number of valid reasons, not report the harassment." *Smith v. Rock-Tenn Servs., Inc.*, No. 3:12-CV-00616, 2015 WL 13187074, at *5 (M.D. Tenn. Apr. 16, 2015), aff'd, 813 F.3d 298

(6th Cir. 2016) (quoting *Williams*, 187 F.3d at 566). Similarly, in *West*, this Court held:

> Assuming, *arguendo,* that Parks and other management did not know of the ongoing harassment that followed West's complaint, a jury could reasonably have concluded that management's ignorance was the result of Tyson's failure to respond appropriately to the original complaint by, for example, investigating the complaint, speaking to the harassers, or checking back with West, and such failure cannot be used as a shield against a claim of sexual harassment. *See Hawkins v. Anheuser–Busch, Inc.,* 517 F.3d 321, 339–40 (6th Cir.2008) (a jury could find management had constructive knowledge of harassment based on reporting of some instances of harassment and management only moving employee to address it). Additionally, the jury could have concluded that at least one other supervisor, Penick, was aware that West had complained of harassment.

*West v. Tyson Foods, Inc.,* 374 Fed. Appx. 624, 634 (6th Cir.2010). The same is true for Ms. Schlosser. VRH moved Ms. Schlosser to another team, did not discipline Mr. Sanders, and failed to follow-up with Ms. Schlosser afterward. Further, there is ample evidence that supervisors knew Ms. Schlosser was continuing to be harassed.

### ii.    VRH failed to investigate Ms. Schlosser's allegations in her resignation letter

On July 28, 2016, Ms. Schlosser resigned from her employment. In her resignation letter, Ms. Schlosser detailed all of the harassment she endured. (Pl. Appx., Pl. Trial Ex. 33, Appx_0086-89). Ms. Backes did not investigate any of the allegations in Ms. Schlosser's resignation letter. Ms. Backes testified she wasn't concerned with Mr. Sanders harassing other employees because, "by this time she was already off the island. And she made it clear she didn't want to work for us…"

(Transcript 2/22/23, R. 90, Page ID # 3392-3393). Similarly, Ms. Backes made no effort to investigate the allegations against Mr. Brouse, or any witnesses, because she believed it was isolated to Ms. Schlosser, the only female. (*Id*. at 3393-3395). Despite the resignation letter raising allegations of harassment and discrimination, Mr. Backes did not ask Mr. Sanders, Mr. Brouse, or any of her co-workers about her claims. (Transcript 2/22/23, R. 90, Page ID # 3396, 3410). She never asked anyone on the team if Ms. Schlosser had been treated differently because she was a woman. (*Id*. at 3396). Similarly, Ms. Backes did not follow-up with Ms. Schlosser about her allegations. (*Id*. at 3396-3397).

Finally, Mr. Adler made no effort to investigate the allegations in Ms. Schlosser's resignation letter. (Tr. 2/23/23, R. 91, Page ID # 3624-3625, 3630-3631, 3633, 3634). In fact, Mr. Adler felt relieved when Ms. Schlosser resigned, and it was one less problem to deal with. (*Id*. at 3626, 3627).

VRH's failure to investigate any of the allegations in Ms. Schlosser's resignation letter is further evidence of their indifference. VRH's actions, or lack thereof, show its true harassment policy is, get rid of the victim, get rid of the problem.

## V.    CONCLUSION

For all these reasons, Ms. Schlosser respectfully requests this Honorable Court affirm the District Court's decision denying VRHabilis, LLC's renewed motion for judgment as a matter of law.

/s/ *G. Brandon Hall*_____
G. Brandon Hall
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group
1720 West End Ave., Suite 402
Nashville, TN 37203
(615) 850-0632
bhall@eclaw.com
lauren@eclaw.com
emily@eclaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the proof brief filed in this appeal complied with the type-volume limitations provided in Fed. R. App. P. 32(a)(7)(B) in that that proof brief contains 11,010 words of Times New Roman, 14 pt. font. The word processing software used to prepare the brief was Microsoft Word for Microsoft 365.

/s/ *G. Brandon Hall*_____

G. Brandon Hall
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group
1720 West End Ave., Suite 402
Nashville, TN 37203
(615) 850-0632
bhall@eclaw.com
lauren@eclaw.com
emily@eclaw.com

## CERTIFICATEE OF SERVICE

I hereby certify that on this 15th day of March 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may gain access to this through the Court's electronic filing system.

/s/ *G. Brandon Hall*_____
G. Brandon Hall
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group
1720 West End Ave., Suite 402
Nashville, TN 37203
(615) 850-0632
bhall@eclaw.com
lauren@eclaw.com
emily@eclaw.com

| APPELLEE'S DESIGNATION OF THE RELEVANT DISTRICT COURT DOCUMENTS | | |
|---|---|---|
| Description of Entry | Record Entry No. | Page ID # Range |
| Trial Transcript (2/21/23) | R. 89 | 3123-3322 |
| Trial Transcript (2/22/23) | R. 90 | 3258-3485 |
| Trial Transcript (2/23/23) | R. 91 | 3507-3681 |
| Trial Transcript (2/27/23) | R. 92 | 3693-3746 |